<div style="float:right;text-align:right">DODEMAN<br>*v.*<br>BARROW.</div>

but it leaves it to the discretion of the court to judge what act constitutes possession. It is expressly provided by the Code that "It is not necessary however that a person wishing to take possession of an estate, should pass over every part of it. It is sufficient if he enters on and occupies a part of the land, provided it be with the intention of possessing all that is included in the boundaries. C. C., 3400.

That able jurist, Judge Bullard, in the case *Lecomte* v. *Smart*, 19 L. R., 489, says: "If the defendant had taken possession of the land under an apparent title, we should regard slight acts as evidence of an intention to take possession; but when a man, without any *pretence of title*, goes upon land which he is informed is claimed by another, he must show unequivocal and continued acts of possession for more than a year, to maintain the plea of prescription." While the positive acts of the defendant are shown on the one hand, much can be inferred on the other, from the passive conduct of the plaintiffs, which seems to amount to an intention to rid themselves of the burden of taxes and keeping up levees, abandoning the property to *Mooney* and his vendees. Quem ad modum nulla possessio, adquiri nisi animo et corpore potest: ita nulla amittitur, nisi in qua utrumique in contrarium actum est. ff. Lib. 41; T. D. L. 8; C. C., 3467.

Three fourths of the territory of the State, consisting of forests, prairies, swamps and woodlands, for the present at least, admit of scarcely any other possession than that shown by the defendant in this case. To require this sort of real estate to be enclosed, in order to prescribe, would be the virtual abrogation of the provisions of the Code on the subject of prescription as to a large part of the wealth of the State.

I think that prescription should protect the defendant against the claim of all of the plaintiffs, except perhaps the minor *Angelique Dodeman*.

---

## DAVID WISE *v.* MARTIN GUTHRIE et al.

<div style="float:right;text-align:right">11  91.<br>107 405</div>

In a sale it is essential that the price should be certain, that is to say, fixed and determined between the parties, either by themselves, or by the intervention of a third person; otherwise there exists no sale.
C. C., 2439.

APPEAL from the District Court, Tenth District, Parish of Tensas, *Snyder*, J. *Furrar*, for plaintiff. *Reeves* and *Stacy & Sparrow*, for defendants and appellants.

VOORHIES, J. The plaintiff claims to be the owner of twenty-four bales of cotton, seized under a writ of *fieri facias*, issued on a judgment in favor of the defendant against *James N. Cole*, as the property of the latter. He alleges that the cotton was sold and delivered to him, and was in the possession of his agent, *George R. Snodgrass*, when it was levied upon him.

The plaintiff pretends to derive his title from *James Cole*, the seized debtor. On the trial below, he introduced in evidence the following instrument, viz:

"We, the undersigned, promise and oblige ourselves to deliver over unto *David Wise* the present crop of cotton we are about to make, in consideration of all necessaries furnished and to be furnished, to carry on the business of the place, by said *D. Wise*.

JOEL CHANDLER,

"Waterproof, February 23d, 1853. JAS. N. COLE."

WISE
*v.*
GUTHRIE.

The interest of *Joel Chandler* in the crop appears to have been set apart to him and conveyed to the plaintiff. The plaintiff next offered his account in evidence for various goods and merchandize sold and delivered to *James N. Cole*, the items of which, proved by the testimony of his clerk, amounted to the sum of $588 28, exclusive of $67 80, amount of note for balance due in 1852; and also introduced in evidence an order drawn by *James N. Cole* on him in favor of *Reuben Chadwick*, dated the 10th of January, 1854, for the sum of $311 75, purporting to be for the price of three work-horses purchased of the latter.

The cotton, it is shown, was hauled to the gin-house of *George R. Snodgrass*, where it was ginned, baled and marked J. C., and where it was seized as the property of *James N. Cole*. *Dixon*, the overseer of *Snodgrass*, testifies that he marked the cotton in dispute with the letters J. C. without any instructions from any person; that immediately on discovering it, *Cole* told him that it was wrong, as the cotton belonged to *Mr. Wise*. *Chandler* testifies that *Cole* sold the whole of the crop to *Wise;* that " *Cole* was very much embarrassed, and could not have gotten supplies and other necessaries without making the written agreement he did with *Mr. Wise*." *James N. Cole*, also examined as a witness by the plaintiff, testified that he had sold his crop of cotton to *Mr. Wise* early in 1853, on condition that *Mr. Wise* would afford him supplies for carrying on the crop, and take up certain debts for him. That the cotton was taken by him to the gin of *Mr. Snodgrass* at the instance of *Mr. Wise*.

It is not shown whether the cotton was sold to the plaintiff, as pretended, in a lump, by weight, or by the bale; neither is it shown what was the specific price stipulated to be paid by the plaintiff. In a sale, it is essential that the price should be certain, that is to say, fixed and determined between the parties, either by themselves or by the intervention of a third person, otherwise, in the words of the law, there exists no sale. C. C., 2439.

The defendant claims damages from the plaintiff and his sureties on the bond resulting from the injunction. We are of opinion that this is not a case in which damages should be allowed. See the case *Borie* v. *Borie*, 5 L. R., 89. But the judgment injoined bearing interest, eight per cent. must be allowed, to be calculated from the date of the injunction to its dissolution. *Barrow* v. *Bank of Louisiana*, 2 Ann., 456.

It is, therefore, ordered and decreed, that the judgment of the court below be avoided and reversed; and it is further decreed, that the injunction in this case be dissolved, and that the Sheriff proceed to make the sale of the property seized according to law; it is further adjudged and decreed, that the defendant, *Guthrie*, recover of plaintiff in injunction, and his sureties *in solido*, interest at the rate of eight per cent. per annum upon the amount of the judgment injoined, to be calculated from the date of said injunction to the present date; it is further ordered, that the plaintiff and appellee pay costs in both courts.